LEON ROCKMORE, Plaintiff, *v.* MAXWELL J. FEIN, Individually and as Treasurer of The New York State Society of Pathologists, an Unincorporated Association, Defendant.

MILTON M. COHEN et al., Copartners Trading under the Name of SUNNYSIDE MEDICAL LABORATORIES, Plaintiffs, *v.* MAXWELL J. FEIN, as Treasurer of The New York State Society of Pathologists, an Unincorporated Association, Defendant.

Supreme Court, Special Term, New York County, April 12, 1950.

*Abraham J. Nydick* for plaintiffs.
*Eugene A. Sherpick* for defendant.

BOTEIN, J. (orally). These actions, tried together were brought by the owners and operators of two clinical laboratories, licensed as such by the department of health of the city of New York, against the New York State Society of Pathologists, an unincorporated group of physicians practising the specialty of pathology.

Plaintiffs seek a decree adjudging that a provision of the code of ethics of said society is invalid as in restraint of trade, and an injunction restraining the enforcement of the alleged offending canon. In their complaints, plaintiffs charge that as a part of a conspiracy to injure them and others similarly situated, and to monopolize for physicians the operation of clinical laboratories, the society, in 1941, adopted a code of ethics, which in part read as follows: " It shall be unethical for a pathologist to act as director, employee or consultant for a commercial laboratory. For the purposes of this regulation, a laboratory shall be considered a commercial laboratory whenever a layman or physician not a member of the American Medical Association is owner or part-owner or participates or shares in the profits of the operation of such an institution. A pathologist affiliated with such an institution shall not be considered eligible for membership in this Society and shall be dropped from membership if he becomes so affiliated."

Plaintiffs assert that to advance its alleged purpose and to force lay owners of laboratories to dispose of them to pathologists, the defendant society caused the department of health of the city of New York to adopt a regulation which requires clinical laboratories to be under the supervision of licensed physicians who have had training in pathology. Plaintiffs are laymen and fall within the class of persons with whom members of the society may not, under the code of ethics, associate in the operation of a clinical laboratory. They contend that the effect of the canon, when combined with the health department regulation, has been to make it difficult for them to obtain physicians to direct their laboratories, to their damage.

So far as the evidence adduced by the plaintiffs indicates, the alleged offending ethical regulation was strictly intramural in its implementation. It seems to me that the defendant society said in effect " If you want to become or remain a member of this organization, you may not be employed by a commercial laboratory." The plaintiffs have not proven that the defendant did anything more than merely enunciate this principle. There has been no showing that in adopting this ethical principle the defendant was not aspiring to attain the objective

reflected by the ordinary meaning of certain language it employed namely, the elevation and the maintenance of professional standards for that branch of medicine known as pathology.

The defendant had the right in good faith to define certain minimal professional requirements which it demanded of its own members. These requirements, I find, have a reasonable connection with improving and maintaining the conditions and standards under which the members practice their profession, and also tend to regulate fair dealing among the defendant's members. They are directed to persons dedicated to a profession which holds its members to a higher standard of conduct than prevails in most other callings. The Medical Practice Act (Education Law, art. 131) expressly prohibits physicians from engaging in certain practices which are countenanced without question in other fields of endeavor. There is not a scintilla of evidence that they were conceived to restrain competition, create a monopoly or hinder or obstruct the plaintiffs or others similarly situated.

In fact, there is no evidence that the defendant Society as such imposed or sought to impose its ethical principles upon any but its own members. If the indirect effect of the adoption of the ethical regulation was to cause the plaintiffs some incidental inconvenience, embarrassment, restraints, or even pecuniary loss, these are consequences that could flow from acts conceived from the highest and most unselfish of professional motives. They do not constitute in and of themselves ground for the granting of the repressive equitable relief sought herein.

I appreciate that it is very difficult to establish a case of this kind. The core of the plaintiffs' allegations is conspiratorial in nature, and conspiracies, we know, are not hatched out in the open. For this reason the plaintiffs should be given and have been given great leeway and scope in the presentation of their proof. As I indicated previously, I entertained some doubt as to whether or not even a prima facie case has been made out.

Specifically, there is no evidence whatsoever from which the court could draw an inference that the defendant sponsored, recommended, or even suggested the enactment of the 1941 rule or regulation of the city board of health requiring clinical laboratories to employ as director a duly licensed physician with stated laboratory experience. Clearly, soon after it was organized in 1938, or two or three years before the department

of health rule or regulation became effective, the defendant society passed a resolution decrying as unethical such employment of any of its members. The substance of this resolution was reiterated in the allegedly offending canon of ethics.

There is no evidence that the defendant did anything to foreclose the plaintiffs, or any laboratory similarly situated, from participating in the health insurance plan. This is another act of impropriety alleged in the complaint. Nor has there been any proof, as alleged in the complaint, that it was suggested that the plaintiffs dispose of their laboratory buildings to pathologists.

As previously stated, no evidence has been presented to impeach the good faith or *bona fides* of the defendant in adopting its code of ethics, nor to warrant an inference that it was not adopted for the reasonable purposes indicated on its face. The plaintiffs' main quarrel herein seems to lie with the board of health for enacting the 1941 regulation. If that regulation did not require a laboratory to employ a licensed physician as director, I am certain that the plaintiffs would be unconcerned about the defendant's canons of ethics. This indicates that the defendant's ethical regulations complained of by the plaintiffs standing alone cannot be availed of by the plaintiffs in support of their complaint.

Unfortunately for the plaintiffs' causes of action, the canons of ethics do stand alone because of the previously mentioned failure to prove any connection of the defendant with the enactment of the board of health's 1941 regulation. This failure of proof, it seems to me, is fatal to the plaintiffs' case and removes the keystone of its arch of proof.

I grant the motion made at the end of the entire case to dismiss the complaint and direct judgment for the defendant. The foregoing shall constitute the findings and conclusions of the court, with the consent of counsel, and I direct judgment for defendant in each of the two cases.

Settle judgments.